Law Offices
**MORGAN, LEWIS & BOCKIUS LLP**
Sam S. Shaulson
Ira G. Rosenstein
101 Park Avenue
New York, New York 10178
(212) 309-6718 (Telephone)
(212) 309-6001 (Fax)
Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHRISTOPHER FRATICELLI, on
behalf of himself and all others similarly
situated,

<em>Plaintiffs,</em>

v.

MSG HOLDINGS, L.P. and THE MADISON
SQUARE GARDEN COMPANY

<em>Defendant.</em>

Civil Action No.: 1:13-cv-06518-JMF

**MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR COURT AUTHORIZED NOTIFICATION**
**AND CONDITIONAL CERTIFICATION, PURSUANT TO 29 U.S.C. § 216(B)**

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ................................................................................................ 1

II.   FACTS ................................................................................................................ 4

      A.   MSG And Internships. ......................................................................... 4

      B.   Plaintiff and His Internship. ................................................................ 5

III.  ARGUMENT ..................................................................................................... 7

      A.   The Test For Determining Whether Conditional Certification Is
           Appropriate Should Be Meaningful. .................................................. 7

           1.   The FLSA § 216(b) Collective Action Procedure Was Enacted
                Specifically To Limit Class Litigation. ..................................... 7

           2.   The Onerous Burdens On The Courts And The Parties Warrant A
                Meaningful Conditional Certification Standard. ........................ 8

           3.   The Common Unlawful Policy Or Practice Should Be Subject To
                Common Proof. .......................................................................... 10

      B.   Under Any Standard, Plaintiff Has Failed To Meet His Burden To
           Establish All Interns Are Similarly Situated. .................................... 12

      C.   Plaintiff Has Not Met His Burden To Establish He is Similarly Situated to
           Other Interns. ..................................................................................... 14

           1.   Plaintiff And Other Interns Are Not Similarly Situated As To Their
                Internship Activities. ................................................................. 14

           2.   Plaintiff and Other Interns Are Not Similarly Situated As To Their
                Training And Benefits. ............................................................... 15

           3.   Plaintiff And Other Interns Are Not Similarly Situated As To The
                Level Of Supervision And The Extent To Which The Internships
                Impeded Department Operations. .............................................. 17

           4.   Plaintiff and Other Interns Are Not Similarly Situated As To
                Whether Activities Performed By Interns Were The Same As
                Those Performed By Paid Employees. ....................................... 18

      D.   MSG's Internship Program Was Not Centralized Or Administered
           Uniformly. .......................................................................................... 20

E.   If This Court Were To Permit Any Notice, Which It Should Not, It Should Be Limited Only To Departments Where Plaintiff And The Three Opt-Ins Interned. ...............................................................................................22

F.   The Notice Requested By Plaintiff Is Inappropriate. ...............................................23

IV.   CONCLUSION ...............................................................................................25

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adair v. Wisconsin Bell, Inc.,*
  2008 WL 4224360 (E.D. Wis. Sept. 11, 2008) ................................................................9

*Alonso v. Uncle Jack's Steakhouse, Inc.,*
  648 F. Supp. 2d 484 (S.D.N.Y. 2009) ........................................................................8

*AT&T Mobility LLC v. Concepcion,*
  131 S. Ct. 1740 (2011) ........................................................................................9

*Basco v. Wal-Mart Stores, Inc.,*
  2004 WL 1497709 (E.D. La. Jul. 2, 2004) ...................................................................8

*Bobadilla v. MDRC,*
  2005 WL 2044938 (S.D.N.Y. Aug. 24, 2005) ................................................................6

*Brickey v. Dolgencorp, Inc.,*
  272 F.R.D 344 (W.D.N.Y. 2011) ............................................................................10

*Clarke v. JPMorgan Chase Bank, N.A.,*
  2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010) ...............................................................6

*Colon v. Major Perry Street Corp.,*
  2013 WL 3328223 (S.D.N.Y. Jul. 2, 2013) .................................................................24

*Colozzi v. St. Joseph's Hosp. Health Ctr.,*
  595 F. Supp. 2d 200 (N.D.N.Y. 2009) .....................................................................9, 24

*Diaz v. Elecs. Boutique of Am., Inc.,*
  2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ..............................................................12

*Fei v. WestLB AG,*
  2008 WL 7863592 (S.D.N.Y. Apr. 23, 2008) ...............................................................24

*Flores v. Lifeway Foods, Inc.,*
  289 F. Supp. 2d 1042 (N.D. Ill. 2003) .....................................................................21

*Foster v. Food Emporium,*
  2000 WL 1737858 (S.D.N.Y. Apr. 26, 2000) ...............................................................24

*Gorman v. Consol. Edison Corp.,*
  488 F.3d 586 (2d Cir. 2007) ................................................................................19

*Gortat v. Capala Bros., Inc.,*
  2011 WL 2133769 (E.D.N.Y. May 27, 2011) ................................................................8

*Guaman v. 5 M Corp.*,
  2013 WL 5745905 (S.D.N.Y. Oct. 23, 2013) ....................................................22

*Guillen v. Marshalls of MA, Inc.*,
  2012 WL 2588771 (S.D.N.Y. Jul. 2, 2012) ......................................................12

*Guillen v. Marshalls of MA, Inc.*,
  750 F. Supp. 2d 469 (S.D.N.Y. 2010)..............................................................21

*Hamadou v. Hess Corp.*,
  915 F. Supp. 2d 651 (S.D.N.Y. 2013)..............................................................22

*Hens v. ClientLogic Operating Corp.*,
  2006 WL 2795620 (W.D.N.Y. Sept. 26, 2006) ..............................................22

*Hoffmann-La Roche, Inc. v. Sperling*,
  493 U.S. 165 (1989)..............................................................................7, 8, 10

*Ikikhueme v. CulinArt, Inc.*,
  2013 WL 2395020 (S.D.N.Y. Jun. 3, 2013) (Furman, J.) ......................12, 19, 21

*Johnson v. TGF Precision Haircutters, Inc.*,
  2005 WL 1994286 (S.D. Tex. Aug. 17, 2005) ..............................................19

*Khan v. Airport Mgmt. Servs., LLC*,
  2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011)................................................12

*LeGrand v. Educ. Mgmt. Corp.*,
  2004 WL 1962076 (S.D.N.Y. Sept. 2, 2004)..................................................24

*Lujan v. Cabana Mgmt., Inc.*,
  2011 WL 317984 (E.D.N.Y. Feb. 1, 2011)......................................................23

*Lundy v. Catholic Health Sys. of L.I., Inc.*,
  711 F.3d 106 (2d Cir. 2013) ............................................................................19

*MacGregor v. Farmers Ins. Exch.*,
  2011 WL 2981466 (D.S.C. Jul. 22, 2011) ......................................................11

*McBeth v. Gabrielli Truck Sales, Ltd.*,
  2011 WL 338123 (E.D.N.Y. Feb. 3, 2011)......................................................24

*Mendoza v. Casa de Cambio Delgado, Inc.*,
  2008 WL 938584 (S.D.N.Y. Apr. 7, 2008)......................................................21

*Morales v. Plantworks, Inc.*,
  2006 WL 278154 (S.D.N.Y. Feb. 2, 2006)......................................................21

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010)..........................................................................2, 7, 12, 19

*Pfohl v. Farmers Ins. Grp.*,
  2004 WL 554834 (C.D. Cal. Mar. 1, 2004) ...................................................................21

*Romero v. La Revise Assoc., L.L.C.*,
  -- F. Supp. 2d --, 2013 WL 5041458 (S.D.N.Y. Sept. 16, 2013)....................................23

*Rudd v. T.L. Cannon Corp.*,
  2011 WL 831446 (N.D.N.Y. Jan. 4, 2011) ................................................................8, 22

*Ruiz v. Serco, Inc.*,
  2011 WL 7138732 (W.D. Wis. Aug. 5, 2011)................................................................11

*Sanchez v. JMP Ventures, LLC*,
  2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ..................................................................21

*Sobczak v. AWL Indus., Inc.*,
  540 F. Supp. 2d 354 (E.D.N.Y. 2007) ..........................................................................24

*Syrja v. Westat, Inc.*,
  756 F. Supp. 2d 682 (D. Md. 2010) ..............................................................................11

*Taylor v. McLane Foodservice, Inc.*,
  2013 WL 943531 (D. Kan. Mar. 11, 2013) ...................................................................19

*Trinidad v. Pret A Manger (USA) Ltd.*,
  962 F. Supp. 2d 545 (S.D.N.Y. Jul. 11, 2013) .........................................................22, 24

*Vargas v. HSBC Bank USA, N.A.*,
  2012 WL 10235792 (S.D.N.Y. Aug. 9, 2012)...............................................................10

*Vasquez v. Vitamin Shoppe Indus., Inc.*,
  2011 WL 2693712 (S.D.N.Y. Jul. 11, 2011) ................................................................12

*Velez v. Sanchez*,
  693 F.3d 308 (2d Cir. 2012).............................................................................................1

*Walling v. Portland Terminal Co.*,
  330 U.S. 148 (1947).........................................................................................................1

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)...................................................................................................11

*Wang v. Hearst Corp.*,
  293 F.R.D. 489 (S.D.N.Y. 2013) ..........................................................................2, 13, 20

*Wright v. Lehigh Valley Hosp.*,
   2010 WL 3363992 (E.D. Pa. Aug. 24, 2010) ........................................................10

*Zivali v. AT&T Mobility LLC*,
   646 F. Supp. 2d 658 (S.D.N.Y. 2009) ................................................................10

*Zivali v. AT&T Mobility LLC*,
   784 F. Supp. 2d 456 (S.D.N.Y. 2011) ................................................................10

**BRIEFS**

*Wang v. Hearst Corp.*,
   No. 12-793, Dkt. #23 (S.D.N.Y. Jun. 7, 2012) .....................................................13

**FEDERAL STATUTES**

29 U.S.C. § 201 *et seq.* .................................................................................. passim

29 U.S.C. § 216(b) .......................................................................................... passim

29 U.S.C. § 251(a) .................................................................................................8

29 U.S.C. § 251(a)(4), (7) ....................................................................................23

29 U.S.C. §§ 251(a), 256(b) ...................................................................................9

29 U.S.C. §§ 255-56 ..............................................................................................8

**RULES**

Fed. R. Civ. P. 23 ......................................................................................11, 23, 24

## I.   __INTRODUCTION__

There is no such thing as an "intern" or "unpaid intern" under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* So Plaintiff's allegation that MSG misclassified individuals as "interns" or "unpaid interns" means nothing for the purpose of determining whether there has been a violation of the FLSA or whether a collective action should be conditionally certified. As the Supreme Court has long recognized, even where an individual does "work in the kind of activities covered by" the FLSA, Congress did not intend to "stamp all persons who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150, 152 (1947). Indeed, under controlling Supreme Court authority, individuals can be either "employees," in which case they are entitled to minimum wage and overtime pay, or "trainees," in which case they need not be paid minimum wage and overtime. *Id.* at 149-53.

To determine whether an individual is a trainee or an employee under the FLSA, the courts and the U.S. Department of Labor have invoked a variety of fact-intensive tests. These tests require an examination of different factors such as (1) whether the individual or the company derived the primary benefit from the relationship; (2) what training and educational value was provided by the company to the individual; (3) what other benefits did the individual receive; (4) whether the individual displaced regular employees; (5) whether the individual worked under close supervision of existing staff; (6) what immediate advantages the company derived from the activities of the individual and whether the company's operations may have been impeded; (7) whether the individual was entitled to a job at the conclusion of the internship; and (8) whether the individual understood that he or she was not entitled to wages. DOL Fact Sheet #71; *Walling*, 330 U.S. at 149-53; *Velez v. Sanchez*, 693 F.3d 308, 330 (2d Cir. 2012) (court should consider who is the "primary recipient of benefits" from the relationship); *Wang v.*

1

*Hearst Corp.*, 293 F.R.D. 489, 493-94 (S.D.N.Y. 2013) (looking at all factors to determine who is the primary recipient of benefits). Absent some standardized set of activities performed by all interns tying them together, an adjudication of these factors must be done on an individualized basis and not collectively. Indeed, as the Second Circuit recognized, conditional certification is only warranted where the plaintiff meets his burden to prove, with facts and not unsupported assertions, that he and potential opt-in plaintiffs "together were victims of a ***common*** policy or plan ***that violated the law***" and are similarly situated ***with respect to facts that matter for determining liability*** under the FLSA. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (emphasis added).

Here, Plaintiff's motion is fundamentally different than the typical motion because he admits at the outset that he is different from other interns in ways that are *material* for purposes of determining liability. Plaintiff seeks to bring a collective action on behalf of all interns at MSG regardless of which of over 100 different departments each interned in, what activities each intern performed, what undergraduate or masters educational program each was enrolled in, what benefits each received from the internship, what burden each imposed on MSG through the receipt of training and supervision, how many days and hours each interned per week, and what, if any, money each received from MSG, based on the central premise that he and other interns "***perform the exact same work***." Pl's Br. at 1 (emphasis added). Aside from this being the exact type of unsupported assertion deemed insufficient to warrant conditional certification under *Myers*, **Plaintiff admitted under oath that this premise is just not true**. He testified in the clearest of terms that the work he performed was not the "same work" as even the other interns for whom he submitted declarations:

> Q. So the activities that you performed as an intern at MSG were entirely different than the duties Ms. Blum performed. Correct? . . .

2

A.  Again, my department was very different than hers, so yes.

Q.  And so it's fair to say also that you did not perform the same work as Ms. Blum, correct?

A.  It's fair to say.  I did not perform the same duties as her department did, no.

Q.  So you didn't perform the same work as Mr. Herrera, correct?

A.  No, I didn't do any of that work.

Q.  So your activities were entirely different than the activities performed by Scott Winter during his internship.  Is that right?

A.  Our activities -- our daily activities were different. . . .

Q.  No, there was no overlap [between your internship activities and those of Mr. Winter]?

A.  There was no overlap.  We didn't do the same things.

Q.  So you did not perform the same work as Mr. Winter, correct?

A.  That is correct. . . .

Fraticelli Dep. at 302, 305, 306-07.

Plaintiff also testified he had no idea about interns in the more than 100 other departments – what activities they performed, what training they were given, what benefits they derived, what days and hours they interned, how much money they received – and agreed that the treatment of interns in each department is "different." Fraticelli Dep. at 190-91, 222, 314-21. Although he knew that different training was offered to certain interns, he claims that he did not receive any training or even find out about its availability because never bothered to set up his MSG email account. *Id.* at 190-98. Not only does he admit not doing the "same work" or receiving the same training as other interns, but Plaintiff also testified that the best and perhaps only way to determine what activities each individual performed, what educational program each individual was enrolled in, what benefits each individual received, what training and supervision each individual received, what burden each individual imposed on MSG, and what hours each individual spent on his or her internship would be to ask each intern "personally" (*id.* at 325-27) – a necessarily individualized inquiry.

Plaintiff has not even come close to demonstrating that he and other MSG interns were all victims of a **common** and **unlawful** policy and that he is similarly situated to other interns with respect to facts that matter for determining liability under the FLSA. Therefore, this Court should deny his motion to conditionally certify a nationwide collective action.

## II.   FACTS

### A.   MSG And Internships.

MSG Holding, L.P. and The Madison Square Garden Company ("MSG") run sports, media, and entertainment businesses in numerous locations in New York, but operating in other states including New Jersey, Illinois, and California. Stratton-Howard Decl. ¶5. Over 1600 individuals interned at MSG since 2007. Stratton-Howard Decl ¶5. MSG operates a vast range of media platforms from sports teams (such as the Rangers, Knicks, Liberty), to cable channels (such as Fuse, MSG Network, MSG Plus Network), to music concerts and events, to theatrical productions. Within and crossing all those different areas there were over 100 separate departments that had interns – ranging from Finance Administration, On-Air Promotion, Executive, Public Relations, Production Management, Digital Media/Interactive, Internal Communications, Merchandising & Licensing, Corporate Hospitality, Human Resources, Christmas Marketing, Future Venues and IT – Business Systems, to name just a few. Stratton-Howard Decl. ¶5, Ex. A.

Each department decided whether to create internships within their department and how to structure those internships, conducted their own selection process, worked with different academic institutions that had different requirements for their students, created different activities for their interns, had internships running on different days and for different hours, and had their own intern training. Diaz Decl. ¶¶4-7; DePoto Decl. ¶¶3, 5-12. Indeed, even Plaintiff and his three declarants, who interned in different departments, had no similarities at all among

their activities or hours and admit that they did not perform any of the "same work." Fraticelli

Dep. at 302, 305, 307; Fraticelli Decl. ¶8; Blum Decl. ¶11; Winter Decl. ¶11; Herrera Decl. ¶7.

Because each department decided how to structure their internships, each not only had their own

training, some even created their own training manuals.  Diaz Decl. ¶6 (explaining that the

Entertainment Bookings - Finance Department had its own intern manual which explained

finance and budgeting concepts).  And even within departments, intern activities varied

depending on that intern's individual interests and their school requirements, and the hours were

flexible in order to accommodate the intern's class schedule or other obligations.  Rosato Decl.

¶14; Fahy Decl. ¶11; Sabzwari Decl. ¶6.  Thus, each intern's experience at MSG was different –

depending on the department in which they interned, the educational requirements of their

school, and their individual interests.

> **B.**     **Plaintiff and His Internship.**

Christopher Fraticelli interned from September 2011 to January 2012 at the Rangers'

practice facility in Greenburgh, New York for the Rangers' Coaches & Trainers Department.

Fraticelli Dep. at 126, 181, 207, Fraticelli Decl. ¶3.  He was the only intern in that department at

that time, and only one of four in the practice facility, and had limited interactions with other

interns.  Fraticelli Dep. at 217-222, 236-38, 286-87, 291-93.  Plaintiff was in the Masters

Program for Sports Business Management at Manhattanville College at the time and needed an

internship related to his curriculum to graduate.  *Id.* at 40, 155-56.  Plaintiff sought out the

internship himself, and was not recruited by MSG.  *Id.* at 40-41.  He did not have to interview for

the internship like he would for a regular job and he was very excited about the opportunity

because he was a lifelong Rangers fan, it would satisfy his internship credit requirement, and

provide networking and real-life experience.  *Id.* at 122, 125-26, 174.  He understood even before

he began his internship that he would not be receiving minimum wage or overtime.  *Id.* at 40,

121-22.  He also understood that he was not guaranteed a job at the conclusion of his internship.

*Id.* at 128.  He wrote a paper for Manhattanville relating to his experience and was approved for

three academic credits for the internship.  *Id.* at 25-26, 51-52, 136, 156.  And he felt that it was

the "perfect time" to do the internship because he was taking a class in facilities and event

management, and was able to get educationally valuable experience in the real-world related to

what he was learning in class.  *Id.* at 151-53.

Although Plaintiff now attempts to diminish the activities he performed during his

internship in order to obtain conditional certification (Fraticelli Decl. ¶8)[1], he admitted at his

deposition that he lied on his application to the Rangers in order to get his internship in the first

place, and that several of the facts contained in his affidavit submitted to the Court are false.

Plaintiff told the Rangers on his application that the reason he left his most recent position with

the New York Mets was back surgery, when in fact he never had back surgery in his life.

Fraticelli Dep. at 82-83.  To obtain certification, Plaintiff attempts to characterize his internship

as a virtual sweatshop, claiming that he was forced to intern for 55 hours in a number of weeks

(Fraticelli Decl. ¶5), yet at his deposition he admitted this was untrue.  He stated that he may

*never* have interned for 55 hours in any week during his time with MSG.  Fraticelli Dep. at 277-

79, 285-86.  Rather, he generally came in 3 to 5 days per week around 9 or 9:30 a.m., sometimes

later, and often left at 3:30 or 3:45 p.m., in order to accommodate his class schedule.  *Id.* at 250-

51, 266 & Ex. 8.  And he took at least a 30-45 minute lunch every day, in the practice facility

cafeteria where he did not have to pay for his food, sometimes eating with the Rangers players.

*Id.* at 257, 261, 274.  Most importantly, in his declaration, Plaintiff swore that other interns

---

[1] Such denigration of duties in FLSA litigation is not unusual.  *See Bobadilla v. MDRC*, 2005 WL 2044938, at *7-8 (S.D.N.Y. Aug. 24, 2005) (observing that the plaintiff was attempting to "downplay" his duties); *Clarke v. JPMorgan Chase Bank, N.A.*, 2010 WL 1379778, at *19 (S.D.N.Y. Mar. 26, 2010) (observing that the plaintiff was "denigrating his duties to make it appear as if he primarily performed" non-exempt work).

performed "similar duties" and were treated "similar" to him (Fraticelli Decl. ¶¶14, 15), and then testified the exact opposite at his deposition. Fraticelli Dep. at 220-21, 302, 304, 307, 316-19 (stating that the duties of his declarants were completely different from his own, the duties of the other 3 interns at the practice facility were different from his own, and he did not know what duties other interns performed).

## III.  ARGUMENT

### A.  The Test For Determining Whether Conditional Certification Is Appropriate Should Be Meaningful.

FLSA plaintiffs may bring a collective action on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). Section 216(b) does not define "similarly situated," so relying on the Supreme Court's decision in *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989) — which holds only that a court may facilitate notice to potential plaintiffs "in appropriate cases" — many district courts in this Circuit have established a two-step analysis. *Myers*, 624 F.3d at 555. According to the Second Circuit, conditional certification is only appropriate once plaintiffs make a "'factual showing' that they and potential opt-in plaintiffs 'together were victims of a *common* policy or plan *that violated the law*'" and the "'factual showing' cannot be satisfied simply by 'unsupported assertions.'" *Id.* (emphasis added). Thus, this Court should reject Plaintiff's effort to have it rubber-stamp conditional certification, and instead apply a meaningful standard requiring factual evidence that there was an *unlawful* policy or practice that is *susceptible to common proof* on facts pertinent to FLSA liability.

### 1.  The FLSA § 216(b) Collective Action Procedure Was Enacted Specifically To Limit Class Litigation.

Plaintiff's claim that the purpose of § 216(b) is to advise all potential collective action members at the inception of an action of its existence to encourage them to join (Pl's Br. at 7)

turns the history of the FLSA on its head.  Rather, in response to a flood of "representative" litigation, Congress amended the FLSA in 1947 to *limit* employees' ability to proceed collectively.  First, Congress prohibited representative FLSA actions and expressly restricted suits under § 216(b) to include only those "similarly situated" individuals who file a consent to join.  Second, it imposed a two-year statute of limitations where none had previously existed. Finally, it clarified that filing a purported collective action does *not* toll the limitations period for those who may later join. Pub. L. No. 52-49, §§ 5-7, 1947 U.S.C.C.S. 85; 29 U.S.C. §§ 255-56; *Gortat v. Capala Bros., Inc.*, 2011 WL 2133769, at *2 (E.D.N.Y. May 27, 2011).

Congress expressly codified its findings that the original FLSA had "creat[ed] wholly unexpected liabilities, immense in amount and retroactive in operation," and that the flood of litigation "would bring about financial ruin of many employers and seriously impair the capital resources of many others." 29 U.S.C. § 251(a).  Absent appropriate limitations, "employees would receive windfall payments" for activities for which they expected no payment, the demands to be paid for such activities would increase, and "the courts of the country would be burdened with excessive and needless litigation[.]" *Id.*

### 2.   The Onerous Burdens On The Courts And The Parties Warrant A Meaningful Conditional Certification Standard.

The touchstone for conditional certification is judicial efficiency. *See Hoffmann-La Roche*, 493 U.S. at 170; *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 489 (S.D.N.Y. 2009); *Basco v. Wal-Mart Stores, Inc.*, 2004 WL 1497709, at *5 (E.D. La. Jul. 2, 2004).  This purpose is *not* achieved, however, by rubber-stamping a conditional class and leaving the parties to months of expensive classwide discovery before taking a meaningful look at whether collective litigation is appropriate. *See, e.g., Rudd v. T.L. Cannon Corp.*, 2011 WL 831446, at *6 (N.D.N.Y. Jan. 4, 2011) (courts must be "mindful of the potential burdens

associated with defending against an FLSA claim involving a large and broadly defined collective group of plaintiffs" and avoid "the potential for overreaching [which] would result in loss of the efficiencies") (citing *Adair v. Wisconsin Bell, Inc.*, 2008 WL 4224360, at *4 (E.D. Wis. Sept. 11, 2008) ("'[I]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.'") (citation omitted).

Plaintiff's allegation that there is no prejudice to Defendants by a minimal standard and sending notice to the putative class (Pl's Br. at 8) is patently untrue. There is a clear "burden associated with defending against an FLSA" collective action claim after notice, of which a court must be "mindful." *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009). In addition, conditional certification gives plaintiffs significant leverage divorced from the actual merits of their claims: "Faced with even a small chance of a devastating loss, defendants will be pressured into settling questionable claims." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1752 (2011).

Plaintiff's argument that early notice will "preserve and effectuate the rights of potential plaintiffs whose claims might otherwise become time barred" since the statute of limitations runs until other employees opt in (Pl's Br. at 7) cannot justify the toothless standard he proposes. The running of the statute of limitations is precisely as Congress intended. *See* 29 U.S.C. §§ 251(a), 256(b). Certification is inappropriate where the inquiry into whether a given intern is properly classified as a trainee would be individualized, and judicial efficiency is not served by certifying a group who cannot prove their claims with common evidence, regardless of the running of the statute of limitations. Nothing prevents an individual who believes his or her FLSA rights were violated from filing suit. It is not the courts' business to help solicit potential litigants simply

because the statute of limitations is running. *See Hoffmann-La Roche*, 493 U.S. at 174 (although "intervention in the notice process for case management purposes" is an appropriate discretionary use of a court's authority, "the solicitation of claims" is not).[2]

As one court explained, a low conditional certification standard that:

> render[s] [conditional certification] automatic upon the magic words: 'other employees similarly situated[,]' [is an] inefficient and overbroad application of the opt-in system, . . . places a substantial and expensive burden on a defendant[,] . . . is at odds with the Supreme Court's recommendation to ascertain the contours of the action at the outset, and . . . does not comport with the congressional intent behind the FLSA's opt-in requirement, which was designed to limit the potentially enormous size of FLSA representative actions . . . [and] reduce excessive litigation spawned by plaintiffs lacking a personal interest in the outcome.

*Wright v. Lehigh Valley Hosp.*, 2010 WL 3363992, at *3 (E.D. Pa. Aug. 24, 2010).

### 3.    The Common Unlawful Policy Or Practice Should Be Subject To Common Proof.

Finally, in order to promote judicial efficiency, a necessary characteristic of any collective litigation is a plaintiff's ability to establish groupwide claims using common evidence. *See, e.g., Vargas v. HSBC Bank USA, N.A.*, 2012 WL 10235792, at *4 (S.D.N.Y. Aug. 9, 2012) (denying conditional certification of allegedly misclassified Fund Accountants who "have very different understandings of their own job duties and spend their time on the job doing very different things" despite a single job description); *Brickey v. Dolgencorp, Inc.*, 272 F.R.D 344, 347-48 (W.D.N.Y. 2011) (denying conditional certification where there was no evidence of a

---

[2] The recent *Zivali v. AT&T Mobility* litigation is a good example of the significant burdens and inefficiency created by a low conditional certification standard. In *Zivali*, the court granted the plaintiff's motion for conditional certification under a very low standard. *Zivali v. AT&T Mobility LLC*, 646 F. Supp. 2d 658, 660 (S.D.N.Y. 2009). Notice went out to a nationwide class of AT&T employees, and over 4,100 current and former employees opted in. *Zivali v. AT&T Mobility LLC*, 784 F. Supp. 2d 456 (S.D.N.Y. 2011). AT&T was forced to engage in two years of expensive and "extensive discovery" until May 11, 2011, when the court finally decertified the action. *Id.* at 456, 459. The court decertified the action because the plaintiffs had not come forward with evidence of a uniform unlawful policy, the putative collective action members lacked a wide variety of settings, and plaintiffs had no common way to prove a material element of their claim. *Id.* at 459, 468. All of these issues were evident from the outset of the litigation, and by applying a meaningful standard to the plaintiffs' motion for conditional certification, the court could have avoided two years of unnecessary and expensive litigation and waste of judicial resources.

"'common policy or plan that violate[s] the law'"); *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 688 (D. Md. 2010) (finding "no doubt" that plaintiffs' claims would require "an unmanageable assortment of individualized factual inquiries"); *Ruiz v. Serco, Inc.*, 2011 WL 7138732, at *6 (W.D. Wis. Aug. 5, 2011) (denying conditional certification because "it would be difficult to generate common answers in light of the individualized inquiries arising from the wide variations in duties, experience, responsibility, discretion and supervisors . . . .").

The Supreme Court reinforced these principles in *Wal-Mart Stores, Inc. v. Dukes*, holding that "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." 131 S. Ct. 2541, 2551 (2011) (quotations omitted). Although *Dukes* was decided in the Rule 23 context, the same reasoning applies under § 216(b) because there is no basis to certify a class or collective action if it does not promote judicial efficiency. *See, e.g., MacGregor v. Farmers Ins. Exch.*, 2011 WL 2981466, at *4 (D.S.C. Jul. 22, 2011) (holding that the reasoning in *Dukes* was "illuminating" and denying conditional certification because "if there is not a uniform practice but rather decentralized and independent action by supervisors . . . individual factual inquiries are likely to predominate and judicial economy will be hindered rather than promoted by certification of a collective action.").

Thus, before Plaintiff's claims can be conditionally certified, Plaintiff must demonstrate through factual evidence that the putative class members were subject to a common and allegedly *unlawful* policy or practice, and that any claimed FLSA violations resulting from that common policy or practice can be established through *common* proof.

**B.** **Under Any Standard, Plaintiff Has Failed To Meet His Burden To Establish All Interns Are Similarly Situated.**

Even if this Court goes no further than the requirement that Plaintiff make a factual showing that that putative class members were "victims of a common policy or plan that violated the law" and were similarly situated with respect to facts on which the criteria for FLSA liability is based, *Myers*, 624 F.3d at 555, Plaintiff's allegation that MSG misclassified interns as unpaid trainees is insufficient to meet that standard. A uniform classification "is not by itself sufficient to constitute the necessary evidence of a common policy, plan or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes" because the classification may be legal as to some individuals. *Vasquez v. Vitamin Shoppe Indus., Inc.*, 2011 WL 2693712, at *4 (S.D.N.Y. Jul. 11, 2011); *see also Ikikhueme v. CulinArt, Inc.*, 2013 WL 2395020, at *2-3 (S.D.N.Y. Jun. 3, 2013) (Furman, J.) (denying conditional certification because allegation that all sous chefs were misclassified was insufficient to show they were similarly situated); *Guillen v. Marshalls of MA, Inc.*, 2012 WL 2588771, at *1 (S.D.N.Y. Jul. 2, 2012) ("[c]ourts in this Circuit have routinely held that the mere fact of a common FLSA-exempt designation . . . is insufficient to find [a putative class] 'similarly situated' for FLSA purposes"); *Khan v. Airport Mgmt. Servs., LLC*, 2011 WL 5597371, at *4 (S.D.N.Y. Nov. 16, 2011); *Diaz v. Elecs. Boutique of Am., Inc.*, 2005 WL 2654270, at *4 (W.D.N.Y. Oct. 17, 2005) (allegation of misclassification is insufficient because liability would require a "detailed factual analysis" of each manager's activities); *cf. Myers*, 624 F.3d at 549 (fact that an employer has classified a group of employees as exempt and not entitled to overtime pay does not warrant class certification because it "does not establish whether all plaintiffs were actually entitled to overtime pay" such that the classification may have been legal for some employees). Here, to determine whether an individual was properly treated as an unpaid trainee, and thus whether MSG is liable to that

individual, the Court will have to determine who received the primary benefit, what training the particular intern received, whether the internship was for the benefit of the intern, whether the particular intern displaced regular employees in the particular department or was under close supervision of existing staff, whether the department that provided the training to the particular intern received any immediate benefits or whether on occasion its operations were actually impeded, whether the intern was entitled to a job at the conclusion of the internship and whether the employer and intern understood the intern was not entitled to the minimum wage. *See* Introduction *supra* at 1.

Facing a different case involving interns, Judge Baer recently held that "evidence of a corporate-wide policy of classifying the proposed class members as unpaid interns is insufficient, as that policy alone cannot answer the liability question, which turns on what the interns did and what benefits they received during their internship." *Wang*, 293 F.R.D. at 495-96. As Judge Baer further explained: "the glaring problem [is] that the Court cannot resort to any *common proof* to determine the very 'nature' of the interns' work." *Id.* (emphasis added). Because there was no "uniform policy . . . with respect to the contents of the internship, including the interns' duties, their training and supervision," the court held that class certification was inappropriate. *Id.* at 497.[3]

---

[3] While this decision addresses class certification, rather than conditional certification, the goal of both is the same judicial efficiency. Judge Baer did grant conditional certification in *Wang*, but did so based on significant discovery and the plaintiff presenting widespread evidence of a policy to replace paid workers with unpaid interns. *See* Bien Declaration in Opposition To Defendant's Motion to Strike and In Support of Motion for Conditional Certification, *Wang v. Hearst Corp.*, No. 12-793, Dkt. #23, Exhs. A-T, Z-EE (S.D.N.Y. Jun. 7, 2012) (evidence of emails which advised supervisors that unpaid interns should be substituted for paid employees to perform basic tasks, in an effort to reduce company costs, deposition transcripts at which company officials testified that interns and employees performed many of the same duties, and internship postings that specifically stated that interns would perform the same duties as regular employees). Plaintiff has presented no such evidence here. Plaintiff testified that he did not know whether he displaced any regular employee at MSG because of his internship. Fraticelli Dep. at 288. Plaintiff also admitted that he did not perform the "same work" as his declarants, did not know what other interns did, and that the way to determine the types of facts that Judge Baer concluded required individual adjudication in denying class certification, such as each intern's activities, hours, compensation, training and the benefits received, would by asking each of them individually. Fraticelli Dep. at 190-91, 302, 305, 307, 316-22, 325-

**C.    Plaintiff Has Not Met His Burden To Establish He is Similarly Situated to Other Interns.**

    **1.    Plaintiff And Other Interns Are Not Similarly Situated As To Their Internship Activities.**

In this case, the activities undertaken by Fraticelli and the three opt-ins are all completely different from each other, and from the activities of other interns in the over 100 different departments at MSG. Plaintiff admitted he did not perform the "same work" as his declarants, he testified that his department was very different from theirs, and there was "no overlap" in activities because we "didn't do the same things." Fraticelli Dep. at 302, 304, 307. Fraticelli alleges he did activities relating to inventory, equipment and uniforms while interning for the New York Rangers Coaches & Trainers Department (Fraticelli Decl. ¶8), while Oritt Blum did different activities relating to news coverage of MSG in the New York Rangers Communications/Public Relations Department. Blum Decl. ¶11. Fernando Herrera did yet another completely different set of activities relating to financial statement adjustments in the Corporate Finance Department (Herrera Decl. ¶7), and Scott Winter was again doing something completely different from the other three – assisting in corporate events and reviewing client agreements for the Corporate Hospitality Department. Winter Decl. ¶11. And although Fraticelli's declaration states in conclusory fashion he believes he performed similar work to other interns (Fraticelli Decl. ¶¶14-15), at his deposition it became clear that the opposite is true. Fraticelli Dep. at 219-220, 222, 286, 292, 314-21 (stating that he was not aware of most of the activities that other interns at the training center performed, he did not know if there is any intern who ever did what he did in his internship with New York Rangers Coaches & Trainers Department and he did not know what other interns did in other departments). Other interns in

---

27. Thus, because Plaintiff has not met his burden to come forward with evidence that the putative class is similarly situated, conditional certification is not appropriate here.

the over 100 different departments did completely different activities from Plaintiff and his declarants under different managers and in different locations – such as shadowing the architects redesigning Madison Square Garden, learning about social media impressions, researching event venues, or observing the entire television production process from the start to the final broadcast. Sabzwari Decl. ¶¶ 8-9; Sallahian Decl. ¶8; Fast Decl. ¶¶6-7; Mayer Decl. ¶6.  Plaintiff testified that he never did these things.  Fraticelli Dep. at 231-33.

**2.** **Plaintiff and Other Interns Are Not Similarly Situated As To Their Training And Benefits.**

Plaintiff claims he received little training or benefit from his internship (Fraticelli Decl. ¶¶9, 12), despite his testimony that it was the "perfect time" to do the MSG internship so that he could receive real world experience related to the things he was learning in his class, and he needed this internship, which was approved for academic credit because it was related to his Masters in Sports Business Administration, in order to graduate.  Fraticelli Dep. at 51, 150-56.[4] Even crediting the statements Plaintiff and his declarants made in their affidavits, it is clear that their alleged lack of training and benefits differed from many other interns who did receive significant training and benefits from their internship.  Fraticelli admitted at his deposition that it was possible other interns received significant training and benefits, as he had no idea the range of benefits, training, and educational experiences that other interns received from their internships.  Fraticelli Dep. at 315-20, 325-26, 199-200.  In fact, Fraticelli voluntarily made himself different from many other interns in that he never even set up his MSG email account so as to be able to receive information on training or learning opportunities.  Fraticelli Dep. at 194-198.

---

[4] Plaintiff's declarant Scott Winter also stated that he received little training or benefit from his internship (Winter Decl. ¶¶13, 15), despite the fact that in his May 2013 letter to MSG, he stated when referencing both his internship and subsequent employment: "I am confident that I will be able to take the tools and training I received here and use it to further my career . . . ." See Stratton-Howard Decl ¶6 , Exhibit B.

Training experiences by different interns varied widely depending on a number of factors such as the department in which they interned, their interests, their college requirements, and other individual factors.  For example, Britni Rosato's college required that her internship in the Production Department had a large educational component, and she completed regular college assignments discussing what she was learning through the internship and how it contributed to her education.  Rosato Decl. ¶6.  Among the things she wrote about were the fact that she received extensive training on production equipment, shadowed employees, learned what made a good interview, learned how to screen interviewees and after a long period of shadowing was permitted to "play" the role of the floor manager for the day while he oversaw her and assisted from the sidelines. *Id.*  Rosato's training experience was also tailored to her unique interests, as she was encouraged to spend time shadowing and learning from those individuals who had the jobs that most interested her, and she felt she learned more at MSG than she "ever did sitting in a classroom." *Id.* at ¶¶14, 22.

Other interns received even more intensive training in completely different areas and manners.  For example, in the Future Venue Department, Sabzwari, an architecture student, spent much of his time observing meetings and presentations with consultants and clients related to the substantial renovation of the Madison Square Garden arena; Michaelides in Merchandising & Licensing spent her time shadowing the buyers and learning how to assemble a "look book" of different styles of merchandise, and was given a project where her supervisor each day taught her how to build a merchandise assortment, and Sallahian filled out a journal on a weekly basis, reporting what he was learning in the Marketing Department and how it related to his marketing concentration – for example learning about the role of and ways to use social media in marketing.  Sabzwari Decl.¶9; Sallahian Decl. ¶¶5, 8; Michaelides Decl. ¶¶9-10.  The

Entertainment Bookings - Finance department taught interns finance and budgeting concepts and how to use Oracle Financial and other systems used for monitoring accounts payable, closing events, budgeting and forecasting, even going so far as to create its own training manual on these topics. Diaz Decl. at ¶¶6-8. And some interns spent their time in cross-department internships, being mentored and trained on the composition of a detailed research paper on one topic and coached on preparing and giving a culminating presentation on that topic. Jacoby Decl. ¶¶6-8, 12. Interns also were sent on research field trips and attended lectures on subjects such as career opportunities in different industries. Jacoby Decl. ¶¶9, 11; *see also* Fraticelli Dep. at 198 (stating he had heard that there was a speaker's series, but never attended because he felt it was "inconvenient" and did not want to travel to it). As a result, many interns felt they received significant benefit from their internship, particularly in terms of the skills they learned that they could use to further their career in a variety of settings. Sabzwari Decl. ¶¶11-12; Fast Decl. ¶¶6-7, 13; Jacoby Decl. ¶¶16-18; Mayer Decl. ¶¶13-17; Michaelides Decl. ¶¶5-12; Egan Decl. ¶¶4-5; Fahy Decl. ¶¶8-10, 13; Sallahian Decl. ¶11; Rosato Decl. ¶¶21-22.

### 3. Plaintiff And Other Interns Are Not Similarly Situated As To The Level Of Supervision And The Extent To Which The Internships Impeded Department Operations.

Plaintiff claims he received little supervision (Fraticelli Decl at ¶11), but evidence from other interns showed that they spent the majority of their time either observing employees in order to learn from them, or performing activities under very close supervision. Sabzwari Decl.¶8; Sallahian Decl.¶10; Rosato Decl.¶¶6, 11-12; Michaelides Decl. ¶¶9-12. These interns testified that they may have impeded the operations of their department because paid staff members took time out to teach them the skills and tools of their trade – from how to use recording equipment, to what goes into the architectural redesign of sports venues. Sabzwari Decl., ¶¶8, 10 (supervisors took the time out of their work to teach him about various aspects of

the redesign project, describe what they were working on, answer his questions, and make sure that he was learning, and did things like take him on a two hour tour of the entire facility to show him various plans for the redesign); Sallahian Decl. ¶10 (supervisors provided him with helpful feedback and guidance and went out of their way to help him learn); Rosato Decl. ¶¶6, 8, 11 (she spent time shadowing employees, observing and listening on headphones, and was constantly trained by the Devils production manager on how to best complete every project); Jacoby Decl. ¶¶6-10 (mentor and supervisors provided guidance and feedback on the best approach to his project and preparing his final presentation, and he regularly had informational meetings to learn other aspects of the business); Michaelides Decl.¶¶9-11 (supervisor "took time out of her job to show me how things were done and to mentor me and provide me feedback"); Fast Decl.¶9 (the production crew constantly would take time out of doing their duties to assist him and give him guidance and advice, and after each game they would explain what went well or what could have gone smoother). And although Herrera claimed his internship did not burden the Corporate Finance Department since he received little supervision or training, other Finance interns took up their supervisors' time as the supervisors trained them on a variety of accounting concepts and programs. Ceglia Decl. ¶¶6, 11-12 (internships were a substantial burden on the Corporate Finance department because interns were given a great deal of training, support and oversight); Shum Decl. ¶¶4-5 (supervisors in Corporate Finance sat with him and taught him about finance activities, and had him meet with employees working in areas he wanted to learn more about).

**4.   Plaintiff and Other Interns Are Not Similarly Situated As To Whether Activities Performed By Interns Were The Same As Those Performed By Paid Employees.**

Plaintiff and his declarants stated that they believed their activities were the same as entry level paid employees (Fraticelli Decl.¶10, Herrera Decl. ¶10, Winter Decl. ¶12) and further speculated: "[i]f I had not performed the various tasks I was assigned, MSG would have had to

hire a paid employee to do them." Fraticelli Decl. ¶13, Herrera Decl. ¶13, Winter Decl. ¶17,
Blum Decl.¶18. As an initial matter, such conclusory and speculative allegations are not
sufficient to establish conditional certification. *See, e.g., Ikikhueme*, 2013 WL 2395020, at *2
(holding that unsupported assertions "'cannot satisfy' a plaintiff's burden at the preliminary
certification stage'") (quoting *Myers*, 624 F.3d at 555); see also Section D, *infra*. But even if
considered, such testimony cannot be evidence of any common policy subject to common proof
since the activities performed by the Plaintiff and each opt-in were, as demonstrated, completely
different and an analysis of whether there were any paid employees who performed the same
activities would necessarily be individualized. Moreover, such speculation carries no weight in
the face of Plaintiff's testimony that he didn't actually know if he "displaced any regular
employee at MSG" because of his internship (Fraticelli Dep. at 288), and undisputed evidence
that other interns spent most of their time shadowing and observing employees, and that no one
was ever hired or expected to perform the activities that other interns performed. Ceglia Decl.
¶10 (during periods when they did not have interns no one was hired to or expected to complete
the activities that an intern would complete if present).[5]

Thus, because Plaintiff did not do the "same work" as any other intern, the Court will
have to determine individual-by-individual what activities each intern performed, what

---

[5] In addition, the hours for interns submitting declarations varied – some as little as eight hours a week, and monies
paid differed ranging from weekly payments of $600 to daily stipends of $30. Rosato Decl. ¶¶17-18; Blum Decl.
¶¶4-7; Herrera Decl. ¶6; Jacoby Decl ¶5. Even if some of these interns were employees and were not trainees, these
differences in hours and compensation can be dispositive as to whether there is liability under the FLSA for any
given intern. For example, under the current federal $7.25 minimum wage, Jacoby would have to spend more than
68 hours a week on his internship activities for his $600 weekly payment to be below the amounts that would be due
to an employee under the FLSA, and in fact, he testified that he never interned on weekends or stayed late. Jacoby
Decl. ¶13. Thus, even if some of these interns were determined to be "employees", the Court would still need to
look at individual differences in hours and payments to determine whether MSG has liability to any given intern.
*See, e.g., Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 596 (2d Cir. 2007); *Taylor v. McLane Foodservice, Inc.*,
2013 WL 943531, at *2 (D. Kan. Mar. 11, 2013) (to state a claim for minimum wage under the FLSA a plaintiff
must allege "that a calculation of total weekly compensation divided by total weekly hours worked yield[ed] a rate
below the minimum wage") (citing *Lundy v. Catholic Health Sys. of L.I., Inc.*, 711 F.3d 106, 115 (2d Cir. 2013));
*Johnson v. TGF Precision Haircutters, Inc.*, 2005 WL 1994286 at *6 (S.D. Tex. Aug. 17, 2005) (discussing the
need to do individualized week-by-week calculations of each plaintiff's "regular rate" of pay to determine liability).

educational program each intern was enrolled in, whether each received educational credit for their internship, the level of supervision for each, the training or other experiences that related to each intern's educational curriculum, and each intern's hours and payments. And as Plaintiff himself testified, the only way to find out these facts for each intern would be to speak to each individual intern "personally" and "go on the intern's word." Fraticelli Dep. at 325-27. As Judge Baer recognized, this sort of individualized analysis renders certification inappropriate. *Wang*, 293 F.R.D. at 493-94.

### D.   MSG's Internship Program Was Not Centralized Or Administered Uniformly.

Plaintiff implies that all internships were administered uniformly, merely based on the fact that interns could submit applications through the MSG website, and basic expectations of professionalism conveyed to interns, such as being on time, wearing professional clothing, following legal confidentiality requirements, not harassing other individuals and being polite on the phone. Pl's Br. at 5. However, beyond this very low bar of complying with the law and demonstrating basic office-appropriate behavior, each intern in each department had his or her own unique activities, hours, educational curriculum, and intern training described above. And while there is a Careers website at MSG, different departments had different selection procedures, contrary to Plaintiff's unsupported speculation that all individuals interested in applying for an internship at MSG regardless of department are directed to this website (Pl's Br. at 5). DePoto Decl. ¶5 (obtaining potential candidates directly from school career services and referrals). Indeed, Plaintiff himself never accessed the website, but sought out his internship on his own in order to satisfy the practical experience requirement for his masters' degree. Fraticelli Dep. at 38-42.

Finally, Plaintiff and each of the opt-ins try to suggest uniformity among all interns by using the exact same boilerplate language: "I know that MSG treated other interns in a manner similar to me based on my observations as well as discussion we often had amongst ourselves." (Fraticelli Decl ¶15, Blum Decl. ¶17, Herrera Decl. ¶15, Winter Decl. ¶16). Apart from the inadmissible hearsay nature of any purported conversations, these are the exact sorts of unsupported assertions – lacking detail as to the exact observations or conversations, or even explanation of how other interns were treated similarly – that courts within this district have held are insufficient to support conditional certification. *See, e.g., Sanchez v. JMP Ventures, LLC*, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (holding that conditional certification was unwarranted where the plaintiff claimed to know that they were all subject to a common practice of failure to pay the minimum wage based on "observations" and "conversations," because the "failure to provide detail as to a single such observation or conversation" rendered the allegations unsupported and conclusory); *Ikikhueme*, 2013 WL 2395020, at *2; *Mendoza v. Casa de Cambio Delgado, Inc.*, 2008 WL 938584, at *2-3 (S.D.N.Y. Apr. 7, 2008); *Morales v. Plantworks, Inc.*, 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006). Even if these allegations were considered, conditional certification should be denied because classifying individuals as interns is not in and of itself illegal and because Plaintiff has not introduced any evidence that *all* MSG interns were treated the same on the factors relevant to determine whether they were trainees.[6]

---

[6] The fact that Plaintiff presents only three other declarants out of a putative class of over 1600, less than two-tenths of one percent, despite multiple rounds of mass solicitation by counsel (Fraticelli Dep. at 101-09, 171-72 and Exs. 5 and 6), further demonstrates that Plaintiff fails to meet his burden of proving a nationwide class of similarly situated individuals here. *See Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 477 (S.D.N.Y. 2010) (declarations from five ASMs at 9 stores out of 820 nationwide not sufficient for conditional certification); *Pfohl v. Farmers Ins Grp.*, 2004 WL 554834, at *10 (C.D. Cal. Mar. 1, 2004) (holding that 13 opt-ins out of a putative class of "hundreds" were insufficient to justify a collective action); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003) (denying conditional certification and notice because the declarations only showed that 4% of class (2 out of 50 employees) were shorted overtime pay and this was not sufficient to show a common policy or plan).

**E.**    **If This Court Were To Permit Any Notice, Which It Should Not, It Should Be Limited Only To Departments Where Plaintiff And The Three Opt-Ins Interned.**

Evidence here clearly establishes that in the over 100 different departments, there was not one centralized internship program, and that the interns in different departments did different activities, had different training, interned for a different number of hours and days, and received different benefits, as Plaintiff himself testified. Thus, the case for limiting notice, if any notice is sent at all, just to those departments where Plaintiff or one of the three opt-ins worked is particularly strong. *See, e.g., Trinidad v. Pret A Manger (USA) Ltd.,* 962 F. Supp. 2d 545, 558-60 (S.D.N.Y. Jul. 11, 2013) (limiting certification of collective action to six areas where affiants worked because plaintiffs could not demonstrate that the employees in other areas were subject to the same disputed policy); *Guaman v. 5 M Corp.,* 2013 WL 5745905, at *3 (S.D.N.Y. Oct. 23, 2013) (limiting conditional certification only to restaurants where the named plaintiff worked, because the named plaintiff's conversations with other employees at other restaurants were not sufficient to show that the alleged common policy or practice extended to other restaurants); *Hamadou v. Hess Corp.,* 915 F. Supp. 2d 651, 662-63 (S.D.N.Y. 2013) (limiting conditional certification to only those two areas where affiants worked and refusing to certify a broader state-wide collective action); *Rudd,* 2011 WL 831446, at *9-10 (conditionally certified off-the-clock collective action only where the affiants worked); *Hens v. ClientLogic Operating Corp.,* 2006 WL 2795620, at *4-5 (W.D.N.Y. Sept. 26, 2006) (where Plaintiffs filed over 60 declarations to support their allegations of nationwide policy of off-the-clock work, notice limited to facilities in where plaintiffs or declarants worked). Accordingly, if the Court were to conditionally certify any collective action, which for the reasons set forth above MSG respectfully maintains would not be appropriate, such certification should be limited only to interns in the four departments where Plaintiff and the three opt-ins interned.

22

**F.**    **The Notice Requested By Plaintiff Is Inappropriate.**

Finally, Plaintiff seeks to send notice to the putative class members for the New York state labor law claims, which has a six year statute of limitations period going back to 2007, even though they have only sought conditional certification of FLSA claims *and have not yet moved the court to certify a New York state law class pursuant to Fed. R. Civ. P. 23*. If the Court were to order any conditional certification and FLSA notice, sending notice going back six years in New York is improper. To permit such notice will lead to confusion and interns with time-barred FLSA claims will likely attempt to opt-in to the FLSA action. Moreover, no one is harmed by failing to send notice going back six years in New York, as all the *additional* individuals who would receive such notice for the extra three year period necessarily would *not* have timely FLSA claims, and no New York class has yet been certified. In fact, doing so is in direct contravention of the Congressional purpose behind the FLSA opt-in procedures, which were intended to ban champertous practices, not encourage them. 29 U.S.C. § 251(a)(4), (7) (recognizing that in the absence of the limitations on representative actions, "employees would receive windfall payments" and "the courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged."). Simply put:

> [t]he purpose of [a conditional certification motion] is to notify and inform those eligible to opt in to the collective action, and time-barred former employees may not do so . . . [There is] no purpose in sending such employees a notice informing them that (1) there is a pending op-in lawsuit, (2) they may not opt in, and (3) they may later receive another notice should their status change due to class certification.

*Lujan v. Cabana Mgmt., Inc.*, 2011 WL 317984, at *9 (E.D.N.Y. Feb. 1, 2011).

The clear trend in this district is to deny such requests for six years of notice, as further evidenced by the fact that all the cases cited by Plaintiff were from 2011 and earlier. *See, e.g., Romero v. La Revise Assoc., L.L.C.*, -- F. Supp. 2d --, 2013 WL 5041458, at *9 (S.D.N.Y. Sept. 16, 2013) (limiting notice of FLSA collective action to employees up to three years prior to filing of

complaint, rather than six years); *Trinidad,* 962 F. Supp. 2d at 654 (restricting the notice period to three years rather than six because "[t]he motion before the Court is only for collective certification of a FLSA opt-in class, and not class certification under Fed. R. Civ. P. 23 for claims under the NYLL"); *Colon v. Major Perry Street Corp.,* 2013 WL 3328223, at *7 (S.D.N.Y. Jul. 2, 2013) (holding that the "appropriate length of the notice period" was three years, in conformance with the FLSA's three-year statute of limitations, rather than six years under the NYLL's six-year statute of limitations).[7]

Due to space constraints, MSG will not detail all of the other ways in which Plaintiff's proposed notice is improper, but they include:

- Plaintiff seeks to define the class to include not only interns at MSG Holdings, L.P. and The Madison Square Garden Company, but also all of their "entities, subsidiaries… and affiliates" without any evidence relating to interns at such other companies or why they are similarly situated.

- Plaintiff's proposed notice states that individuals who interned since September 16, 2010 (three years prior to the filing of the Complaint) may opt-in to the FLSA portion of the suit, even though Plaintiff concedes that the statute of limitations for an individual's FLSA claim continues to run even after a lawsuit is commenced. Pl's Br. at 7.

If the Court orders notice of any kind, MSG respectfully requests that the Court deny Plaintiff's request for notice going back six years, and otherwise directs the parties to meet and confer, and submit a mutually agreeable notice within 30 days of the Court's order. *See, e.g., Colozzi,* 595 F. Supp. 2d at 211 (directing the parties to negotiate the content of an acceptable

---

[7] *See also, e.g., McBeth v. Gabrielli Truck Sales, Ltd.,* 2011 WL 338123, at *3 (E.D.N.Y. Feb. 3, 2011) (limiting class notice period to three years, because "[w]ith respect to extending the notice period to six years, while notice to all former employees, going back six years has been authorized where plaintiffs seek relief under both the FLSA and the New York Labor Law, the growing trend in this district appears to be limiting the notice period to three years."); *Fei v. WestLB AG,* 2008 WL 7863592, at *3 (S.D.N.Y. Apr. 23, 2008) (holding that "[s]ince [plaintiff's] motion to compel proceeds on the premise that he wants to notify potential plaintiffs of their opt-in rights under Section 216(b) of the FLSA" plaintiffs were not entitled to a list of New York employees going back six years); *Sobczak v. AWL Indus., Inc.,* 540 F. Supp. 2d 354, 364 (E.D.N.Y. 2007); *LeGrand v. Educ. Mgmt. Corp.,* 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004); *Foster v. Food Emporium,* 2000 WL 1737858, at *3 (S.D.N.Y. Apr. 26, 2000) (holding that there was "no basis for this Court to authorize notice to potential class members going back six years (which is the statute of limitations under the [New York] Labor Law).").

notice).  If the parties cannot agree, they should submit their separate proposals for the Court's decision.

## IV.    **CONCLUSION**

As the 1947 amendments to the FLSA reflect, and as the Supreme Court has acknowledged, the FLSA attempts to strike a balance between protecting workers while not unduly stirring up claims and subjecting employers to excessive litigation.  The fact that MSG had unpaid interns is not evidence of an illegal policy, nor can the determination of whether individuals were properly classified as trainees be made using common evidence, particularly in light of Plaintiff's admissions that he did not perform the "same work" as the other opt-ins, has no idea about the activities performed by other interns, their hours, or the training and benefits they received, and that the best way to find out this information is to speak to *each* individual intern.  As such, to reflexively certify a nationwide collective action here, and send the requested notice to over a thousand individuals in over a hundred different departments doing completely different activities, receiving completely different training, and obtaining completely different benefits, does not further this balance.

For all the foregoing reasons, MSG respectfully requests that the Court deny Plaintiff's Motion for Conditional Collective Certification and Court Authorized Notice in its entirety.

Dated: March 31, 2014                     Respectfully submitted,

                                          MORGAN, LEWIS & BOCKIUS LLP


                                          s/Sam S. Shaulson
                                          Sam S. Shaulson  (SS 0460)
                                          Ira G. Rosenstein
                                          101 Park Avenue
                                          New York, NY  10178
                                          212.309.6000
                                          212.309.6001 (fax)

sshaulson@morganlewis.com
irosenstein@morganlewis.com

Attorneys for Defendants MSG Holdings,
L.P. and The Madison Square Garden
Company

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 31, 2014, I filed the foregoing

Memorandum of Law in Opposition to Plaintiff's Motion for Court Authorized Notification and

Conditional Certification, Pursuant to 29 U.S.C. § 216(b) electronically with the Clerk of Court

using the CM/ECF system which will send notification of such filing to the following:

VIRGINIA & AMBINDER, LLP
Lloyd R. Ambinder
LaDonna M. Lusher
Suzanne B. Leeds
111 Broadway, Suite 1403
New York, NY 10004

LEEDS BROWN LAW, P.C.
Jeffrey K. Brown
Michael A. Tompkins
Daniel H. Markowitz
One Old Country Road, Suite 347
Carle Place, NY 11514

*Attorneys for Plaintiffs*

s/ *Samuel S. Shaulson*
Samuel S. Shaulson