USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/16/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

CHRISTOPHER FRATICELLI,
individually and on behalf
of other persons similarly
situated who were employed
by MSG HOLDINGS, L.P. and
THE MADISON SQUARE GARDEN
COMPANY and/or any other
entities affiliated with
or controlled by MSG HOLDINGS,
L.P. and THE MADISON SQUARE
GARDEN COMPANY,

     Plaintiff,

 -against-

MSG HOLDINGS, L.P. and THE
MADISON SQUARE GARDEN COMPANY,
and/or any other entities
affiliated with or controlled
by MSG HOLDINGS, L.P. and THE
MADISON SQUARE GARDEN COMPANY,

     Defendants.
-----------------------------------X

13 Civ. 6518 (HBP)

OPINION
AND ORDER

    PITMAN, United States Magistrate Judge:

I. Introduction

    This matter is before me on the parties' joint application to approve their settlement (Letter of Lloyd Ambinder, Esq. to the undersigned, dated Sept. 20, 2018 (Docket Item ("D.I.") 83) ("Ambinder Letter")). The parties have consented to my exercising plenary jurisdiction over this action pursuant to 28 U.S.C. § 636(c).

II. Facts and
    Procedural History[1]

Plaintiffs Oritt Blum, Scott Winter, Kristin Slattery, Fernando Herrera and Chris Fraticelli commenced this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law ("NYLL") §§ 190 et seq., to recover unpaid minimum wages and overtime premium pay. Plaintiffs worked for defendants as unpaid interns in various departments and allege that they were uniformly misclassified by defendants as exempt from the federal and state minimum wage and overtime requirements (Class Action Complaint (D.I. 1) ("Complaint") ¶¶ 22-24; Declaration of Lloyd Ambinder in Support of Plaintiff's Motion, dated Nov. 17, 2014 (D.I. 67) ("Ambinder Decl.") ¶¶ 3, 10-12). Plaintiffs seek to recover, among other things, unpaid wages, attorneys' fees and liquidated damages pursuant to the FLSA and NYLL (Complaint ¶¶ 49, 66, 88).

---

[1] The factual and procedural background of this action is set forth in my previous denials of plaintiffs' motion for preliminary settlement approval and conditional class certification. See Fraticelli v. MSG Holdings, L.P., 13 Civ. 6518 (HBP), 2018 WL 3217410 (S.D.N.Y. July 2, 2018); Fraticelli v. MSG Holdings, L.P., 13 Civ. 6518 (HBP), 2015 WL 8491038 (S.D.N.Y. Dec. 10, 2015). The reader's familiarity with those Opinions are presumed. I shall set out any additional facts to the extent they are pertinent to the legal analysis.

Defendants deny plaintiffs' claims and maintain that plaintiffs were properly classified as exempt under the trainee exception to the FLSA and, thus, are not owed any damages.

Plaintiffs moved three separate times for conditional certification of the FLSA collective pursuant to 29 U.S.C. § 216(b); however, the Honorable Jesse M. Furman, United States District Judge, denied this motion on May 7, 2014 and the undersigned denied it on December 10, 2015 and again on July 2, 2018. See Fraticelli v. MSG Holdings, L.P., supra, 2018 WL 3217410; Fraticelli v. MSG Holdings, L.P., supra, 2015 WL 8491038; Fraticelli v. MSG Holdings, L.P., 13 Civ. 6518 (JMF), 2014 WL 1807105 (S.D.N.Y. May 7, 2014) (Furman, D.J.).

The parties thereafter reached a settlement with respect to named plaintiffs Blum, Winter, Slattery, Herrera and Fraticelli only. Named plaintiffs' total alleged damages, exclusive of attorneys' fees and costs, are $5,751. The parties memorialized the terms of the settlement in a written settlement agreement (Settlement Agreement and Release, annexed to Ambinder Letter as Ex. 1 (D.I. 83-1) ("Settlement Agreement")). Under the proposed Settlement Agreement, defendants agree to pay a net settlement amount of $5,414 -- $667 being paid to Blum, $593 being paid to Winter, $542 being paid to Slattery, $209 being paid to Herrera and $3,403 being paid to Fraticelli (Settlement Agreement at 7-11). The Settlement Agreement further provides

that "Defendants will pay to Plaintiffs' Counsel such fees/expenses approved by the Court, not to exceed fifty thousand dollars" (Settlement Agreement § 3).

For the reasons set forth below, I approve the Settlement Agreement and award $50,000 in attorneys' fees and costs.

III. Analysis

    A. Approval of the
       Settlement Agreement

> Court approval of an FLSA settlement is appropriate
>
> "when [the settlement] [is] reached as a result of contested litigation to resolve bona fide disputes." Johnson v. Brennan, No. 10 Civ. 4712, 2011 WL 4357376. at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." Id. (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)).

Agudelo v. E & D LLC, 12 Civ. 960 (HB), 2013 WL 1401887 at *1 (S.D.N.Y. Apr. 4, 2013) (Baer, D.J.) (alterations in original). "Generally, there is a strong presumption in favor of finding a settlement fair, [because] the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliquichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (Gorenstein, M.J.) (internal quotation marks omitted). In Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), the Honorable Jesse M. Furman,

4

United States District Judge, identified five factors that are relevant to an assessment of the fairness of an FLSA settlement:

> In determining whether [a] proposed [FLSA] settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

(internal quotation marks omitted). The settlement here satisfies these criteria.

First, Blum and Winter will recover 48% of their individual alleged damages and Slattery and Herrera will recover 37% of their individual alleged damages (Ambinder Letter at 4). These percentages are reasonable. See Chowdhury v. Brioni America, Inc., 16 Civ. 344 (HBP), 2017 WL 5953171 at *2 (S.D.N.Y. Nov. 29, 2017) (Pitman, M.J.) (net settlement of 40% of FLSA plaintiffs' maximum recovery is reasonable); Redwood v. Cassway Contracting Corp., 16 Civ. 3502 (HBP), 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (Pitman, M.J.) (net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); Felix v. Breakroom Burgers & Tacos, 15 Civ. 3531 (PAE), 2016 WL 3791149 at *2 (S.D.N.Y. Mar. 8, 2016) (Engelmayer, D.J.) (net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable).

Fraticelli will recover over 100% of his alleged damages (Letter of Lloyd Ambinder, Esq. to the undersigned, dated Oct. 3, 2018 (D.I. 84) ("Rev. Ambinder Letter") at 1).[2] Unlike the other plaintiffs, Fraticelli spent a significant amount of time assisting plaintiffs' counsel with the litigation, including prepping for and attending a lengthy deposition (Rev. Ambinder Letter at 2). Given this background information, I also find Fraticelli's recovery percentage to be fair and reasonable.

Second, the settlement will entirely avoid the expense and aggravation of litigation. The parties have already engaged in extensive motion practice in plaintiffs' attempts to certify the collective. If the parties did not settle, it is likely they would engage in further motion practice and would take several depositions, adding additional litigation expenses.

---

[2] Mr. Ambinder incorrectly states in his first letter that Fraticelli is receiving $403 even though the signed Settlement Agreement states he is receiving $3,403 (Ambinder Letter at 4; Settlement Agreement at 7). In his revised letter to the undersigned, Mr. Ambinder also incorrectly refers to this additional $3,000 as a "service award" to Fraticelli (Rev. Ambinder Letter at 1). Because this action was never certified as a collective or a class action, there is no reason to provide a service award to any class representative. However, considering the primary purpose of requiring district court approval of FLSA settlements is to ensure workers receive "a fair day's pay for a fair day's work," permitting Fraticelli to recover more than 100% of his alleged damages is certainly in line with the FLSA's "remedial and humanitarian goals." Cheeks v. Freeport Pancake House, 796 F.3d 199, 206 (2d Cir. 2015) (internal quotation marks and citations omitted). Thus, I find this award reasonable.

6

Third, the settlement will enable plaintiffs to avoid the risk of litigation. If this action were to proceed to trial, each of the five plaintiffs would have been subjected to a "highly individualized inquiry" under the primary beneficiary test to determine if they were misclassified as unpaid interns as opposed to employees. Glatt v. Fox Searhlight Pictures, Inc., 811 F.3d 528, 539 (2d Cir. 2016) ("the question of an intern's employment status is a highly context-specific inquiry"); see also Xuedan Wang v. Hearst Corp., 617 F. App'x 35, 37 (2d Cir. 2015) (summary order). Under the prevailing caselaw, it is far from certain whether plaintiffs here were actually misclassified as unpaid intern trainees and, thus, whether they were entitled to receive minimum wage or overtime premium pay under the FLSA. The settlement eliminates this risk.

Fourth, counsel represents that the settlement is the product of arm's-length bargaining between experienced counsel and that counsel advocated zealously on behalf of their respective clients during negotiations. There is no evidence to the contrary.

Fifth, there are no factors here that suggest the existence of fraud. Counsel represents that the settlement was agreed upon after extensive negotiations between the parties' attorneys.

7

The parties also agree to a release limited to wage-and-hour claims. I find this release permissible because it is narrowly tailored to the issues involved in this specific litigation. See Redwood v. Cassway Contracting Corp., supra, 2017 WL 4764486 at *3 (release of defendants "from any and all wage and hour and/or notice claims" that could have been brought permissible "because it is limited to claims relating to wage and hour issues"); Yunda v. SAFI-G, Inc., 15 Civ. 8861 (HBP), 2017 WL 1608898 at *3 (S.D.N.Y. Apr. 28, 2017) (Pitman, M.J.) (release that is "narrowly-tailored to plaintiffs' wage-and-hour claims" permissible); Santos v. Yellowstone Props., Inc., 15 Civ. 3986 (PAE), 2016 WL 2757427 at *1, *3 (S.D.N.Y. May 10, 2016) (Engelmayer, D.J.); Hyun v. Ippudo USA Holdings, 14 Civ. 8706 (AJN), 2016 WL 1222347 at *3-*4 (S.D.N.Y. Mar. 24, 2016) (Nathan, D.J.).

Thus, I approve the settlement in this matter.

B. Attorneys' Fees and Costs

The FLSA and NYLL each provide that a successful plaintiff can recover his or her reasonable attorneys' fees and costs. See 29 U.S.C. § 216(b); N.Y. Labor L. §§ 198, 663(1). Even where the plaintiff agrees to a settlement, counsel is still entitled to his or her fees. Kahlil v. Original Old Homestead

Rest., Inc., 657 F. Supp. 2d 470, 474 (S.D.N.Y. 2009) (Holwell, D.J.).

Plaintiffs were represented in this action by various attorneys from Virginia & Ambinder LLC and Leeds Brown Law, P.C. (collectively, "plaintiffs' counsel"). Pursuant to the Settlement Agreement, the parties agreed to the court making a reasonable attorneys' fee determination separate and apart from the settlement amounts awarded to plaintiffs, with the maximum award being capped at $50,000 for both attorneys' fees and costs (Settlement Agreement § 3). Plaintiffs' counsel requests this $50,000 maximum award, while defendants defer to the court's discretion within the confines of the Settlement Agreement.

Whether an attorneys' fee award is reasonable is within the discretion of the court. Black v. Nunwood, Inc., 13 Civ. 7207 (GHW), 2015 WL 1958917 at *4 (S.D.N.Y. Apr. 30, 2015) (Woods, D.J.) (collecting cases). Traditionally, in FLSA settlement cases, attorneys' fees are awarded under the "percentage of the fund" method and one-third of the total settlement is normally considered a reasonable fee. See See Zhi Li Zhong v. Rockledge Bus Tour Inc., 18 Civ. 454 (RA), 2018 WL 3733951 at *4 (S.D.N.Y. Aug. 6, 2018) (Abrams, D.J.) ("one-third of the net settlement amount . . . is an amount routinely approved under the percentage method"); Coleman v. DeFranco Pharmacy, Inc., 17 Civ. 8340 (HBP), 2018 WL 3650017 at *3 (S.D.N.Y. Aug. 1, 2018)

9

(Pitman, M.J.) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit.").

However, when the parties to a FLSA action agree to a separate attorneys' fee determination that is independent of a plaintiff's settlement amount, such as the case here, courts utilize the "lodestar" method, i.e., "the product of a reasonable hourly rate and the reasonable number of hours required by the case," to determine a presumptively reasonable attorneys' fee award. Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); see also Siegel v. Bloomberg L.P., 13 Civ. 1351 (DF), 2016 WL 1211849 at *4 (S.D.N.Y. Mar. 22, 2016) (Freeman, M.J.) (lodestar method utilized where parties reached an FLSA settlement in principle and counsel submitted a separate attorneys' fee application); Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 9 (S.D.N.Y. 2015) (Dolinger, M.J.) (same). Under this method, courts look to the market rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); accord Reyes v. Lincoln Deli Grocery Corp., 17 Civ. 2732 (KBF), 2018 WL 2722455 at *8 (S.D.N.Y. June 5, 2018) (Forrest, D.J.); Greathouse v. JHS Security, Inc., 11 Civ. 7845 (PAE)(GWG), 2017 WL 4174811 at *2 (S.D.N.Y. Sept. 20, 2017) (Engelmayer, D.J.), aff'd, 735 F. App'x 25 (2d Cir. 2018) (summary order).

Plaintiffs' counsel submitted the required contemporaneous time records in support of their application. See Scott v. City of New York, 626 F.3d 130, 133 (2d Cir. 2010) (all applications for attorneys' fees must be supported by contemporaneous time records); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983) (An application for attorneys' fees must be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done."). According to the contemporaneous time records submitted by Virginia & Ambinder LLC, it spent 355.33 hours litigating the case and incurred $159,968.67 in attorneys' fees (Virginia & Ambinder Time Records, annexed to Ambinder Letter as Ex. 2 (D.I. 83-2) ("V&A Records")). According to the contemporaneous time records submitted by Leeds Brown Law, P.C., it spent 125.43 hours litigating the case and incurred $58,696.40 in attorneys' fees (Leeds Brown Law, P.C. Time Records, annexed to Ambinder Letter as Ex. 3 (D.I. 83-3) ("LBL Records")). Plaintiffs' counsel argue that because their claimed lodestar amount equals $218,665.07, their request for $50,000 is a reasonable award.

At the outset, I find plaintiffs' counsel's lodestar calculation to be inflated with respect to both the requested hourly rates and the number of hours.

11

Virginia & Ambinder LLC requests hourly rates of $525 to $425 for partners and $395 for associates, while Leeds Brown Law, P.C. requests $530 for partners and $410 for associates (Ambinder Letter at 7-9). These rates are on the higher end of what is considered a reasonable hourly rate for FLSA attorneys in this District. See Pastor v. Alice Cleaners, Inc., 16 Civ. 7264 (JLC), 2017 WL 5625556 at *7 (S.D.N.Y. Nov. 21, 2017) (Cott, M.J.) ("Courts in this District have determined in recent cases that a fee in the range of $250 to $450 is appropriate for experienced litigators in wage-and-hour cases."); accord Manley v. Midan Rest. Inc., 14 Civ. 1693 (HBP), 2017 WL 1155916 at *11 (S.D.N.Y. Mar. 27, 2017) (Pitman, M.J.); Chamoro v. 293 3rd Café Inc., 16 Civ. 339 (PAE), 2016 WL 5719799 at *4 (S.D.N.Y. Sept. 30, 2016) (Engelmayer, D.J.).

Furthermore, upon my review of the contemporaneous time records, I find a significant number of hours to be "excessive" or "redundant." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) (excessive or redundant hours should be excluded from attorney fee awards); accord Cabrera v. Schafer, CV 12-6323 (ADS)(AKT), 2017 WL 9512409 at *3 (E.D.N.Y. Feb. 17, 2017) (Report & Recommendation), adopted at, 2017 WL 1162183 (E.D.N.Y. Mar. 27, 2017); Andrews v. City of New York, 118 F. Supp. 3d 630, 639 (S.D.N.Y. 2015) (Stein, D.J) ("The court is obligated to exclude hours that

are excessive, redundant, or otherwise unnecessary." (internal quotation marks and citations omitted)).

Most notably, Virginia & Ambinder LLC spent an average of 102.4 hours on preparing and drafting three unsuccessful conditional certification motions. While it is clear that plaintiffs had every intention of pursuing this action as a large-scale, collective FLSA action on behalf of hundreds of unpaid interns who worked for defendants, this goal never came to fruition due to plaintiffs continuously failing to meet the requirements of 29 U.S.C. § 216(b) and Fed.R.Civ.P. 23. "[I]t has been held that 'the most critical factor' in a district court's determination of what constitutes reasonable attorneys' fees in a given case 'is the degree of success obtained' by the plaintiff." Siegel v. Bloomberg L.P., supra, 2016 WL 1211849 at *8, quoting Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 152 (2d Cir. 2008). In cases where the "primary aim" of a FLSA litigation is to "certify a collective action" and that aim is not achieved, a district court may significantly reduce, or altogether subtract, the attorney hours spent on the conditional certification motion because "only a small degree of success" was achieved. Barfield v. New York City Health and Hospitals Corp., supra, 537 F.3d at 152-53 (affirming district court's 50% reduction of the lodestar to reflect plaintiff's counsel's failure to certify the collective action); accord

13

Siegel v. Bloomberg L.P., supra, 2016 WL 1211849 at *10 ("courts do generally find that the denial of a class or collective action certification motion justifies a reduction in fees, given the impact that such certification may have on the quantity and quality of available relief"); Gonzalez v. Scalinatella, Inc., supra, 112 F. Supp. 3d at 13 (subtracting all attorney hours spent on an unsuccessful motion to certify the class where named plaintiff settled immediately following the court's denial of the motion). Thus, I find that the 102.4 hours attributed to these unsuccessful certification motions should be excluded.

Second, the 125.43 hours documented by Leeds Brown Law, P.C. appear to be redundant and unnecessary. Almost every entry in the Leeds Brown Law, P.C. records consists of "reviewing documents" that Virginia & Ambinder LLC drafted (even documents that had already been uploaded on ECF), conferring with Virginia & Ambinder LLC on "litigation strategy" or completing tasks that were duplicative of tasks already completed in the Virginia & Ambinder LLC records. Accordingly, I also find that these 125.43 hours should also be excluded.

Finally, I find several other entries in the Virginia & Ambinder LLC to be excessive, redundant or unnecessary. For example, Virginia & Ambinder LLC lists over 43 entries totaling approximately 11.5 hours for "litigation strategy meetings," claims seven hours to draft a one-page letter motion for a stay

of discovery, documents 10.9 hours preparing Fraticelli for his deposition and documents over 12 hours for the deposition itself.

However, even if I subtract the 102.4 hours spent on the unsuccessful certification motions, subtract the 125.43 hours from Leeds Brown Law, P.C., apply a 50% reduction to the other problematic 41.4 hours, and then apply a reduced hourly rate of $300 across the board to the remaining 232.23 attorney hours, plaintiffs' counsel's lodestar would still be $69,669 -- almost $20,000 more than they are requesting. Despite the numerous problematic entries, as well as, the small monetary amount recovered by plaintiffs in this action, I am required to award plaintiffs' counsel an appropriate lodestar figure based on these remaining hours. See Millea v. Metro-North R.R. Co., supra, 658 F.3d at 166 (holding that the district court "abused its discretion by calculating the [attorneys'] fee award as a proportion of [plaintiff's] monetary recovery" instead of the lodestar amount and that "failing to calculate [the lodestar] as a starting point [in an independent attorneys' fee determination] is legal error").

Therefore, I award plaintiffs' counsel $50,000 in attorneys' fees and costs.

IV. Conclusion

Accordingly, for all the foregoing reasons, I approve the settlement in this matter and award plaintiffs' counsel $50,000 in attorneys' fees and costs. The Clerk of the Court is respectfully requested to mark this matter closed.

Dated:  New York, New York
        October 16, 2018

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel